Don WILSON, Dr. Charles Aronberg, Thomas Jackson, Jay Rodgers, William O. Shaw, Mary Miles, Frank Dussel, Gary Henderson, Raymond Gallagher, Dean Wright, James C. Walshe, Norman N. Alperin, Harold Moskovitz, Louis Zubaly, Stanley E. Clark, Ed Krueger, Gail Parent, Mike Flick, Karen Cook, Bruce Dramer, Dr. David Dauer, Jeanette Moffett, Valerie Nordstrom, and Citizens for Better Postal Service, Plaintiffs,

v.

UNITED STATES POSTAL SERVICE, Defendant.

Civ. A. No. 77–3839–WPG.

United States District Court, C. D. California.

Dec. 6, 1977.

Levy, Koszdin, Goldschmid & Sroloff, Henry R. Fenton, Abe F. Levy, Gerald Goldman, Lawrence R. Rosenzweig, Diane Kimberlin, Los Angeles, Cal., for plaintiffs.

Andrea Sheridan Ordin, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Peter H. Kane, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

Plaintiffs seek a preliminary injunction restraining the transfer of certain mail processing functions to the Marina Sectional Facility ("the Marina"). These functions in the past have been performed by twenty-six local post offices in the western region of Los Angeles County. Jurisdiction is conferred upon this court by 39 U.S.C. § 409 and 28 U.S.C. § 1339.

Plaintiffs set forth two statutory grounds in support of their application for a preliminary injunction. First, they argue that a consolidation of post offices has occurred as a result of the implementation of the Marina Sectional Facility Project ("Marina Project"); that the United States Postal Service ("Postal Service") failed to adhere to the notice requirements respecting consolidations, specified in 39 U.S.C. § 404; and that, accordingly, implementation of the Marina Project should be enjoined until such time as the Postal Service complies with the statutory prerequisites.

Second, plaintiffs contend that the Marina Project constitutes "a change in the nature of postal services which will generally affect services on a nationwide or substantially nationwide basis" (39 U.S.C. § 3661(b)); that the Postal Service failed to submit the proposed Marina Project to the Postal Rate Commission for an advisory opinion as required by 39 U.S.C. § 3661(b); and that plaintiffs, therefore, were precluded from participating in a hearing before the Postal Rate Commission as provided for in 39 U.S.C. § 3661(c). Plaintiffs again contend that under these circumstances a preliminary injunction is appropriate. However, since plaintiffs have not demonstrated that they are likely to succeed on the merits, with respect to either of the two alleged bases for relief, their application for a preliminary injunction is denied. County of Alameda v. Weinberger, 520 F.2d 344, 349 (9th Cir. 1975).

## I. IMPLEMENTATION OF THE MARINA PROJECT HAS NOT RESULTED IN A CONSOLIDATION OF POST OFFICES

### A. Transfer of Mail Processing Functions Does Not Constitute a Consolidation

The Postal Service is empowered to determine whether it is necessary to close

or consolidate a post office. 39 U.S.C. § 404(a)(3). Having determined that closure or consolidation is warranted, the Postal Service must give sixty days notice to affected postal patrons so that they "will have an opportunity to present their views." 39 U.S.C. § 404(b)(1). In addition, such a determination must be in writing. 39 U.S.C. § 404(b)(3). The Postal Service may not implement a closure or consolidation until sixty days after the written determination is made available to affected patrons. 39 U.S.C. § 404(b)(4). Plaintiffs argue that performance of mail processing functions is the very essence of a post office; and that, therefore, relocation of these functions constitutes a consolidation of post offices.

The Postal Service concedes that it did not give notice or prepare a written determination prior to implementing the Marina Project. Thus, the Government's failure to comply with statutory prerequisites has arguably precluded plaintiffs from seeking administrative review by the Postal Rate Commission of this alleged consolidation. 39 U.S.C. § 404(b)(5).[1]

The question presented for this court, therefore, is whether transfer of certain mail processing functions constitutes a consolidation within the meaning of section 404(b).

This court is mindful of the conflicting policies underpinning the Postal Reorganization Act:

"The Postal Service emphasizes the goal of vesting in management the freedom to make decisions without external constraints. The plaintiffs counter with the goal of providing to the American people a public service which is sensitive and responsive to their needs. Although these policies conflict to some extent, we think a balance may be struck whereby management is given the freedom to manage without unnecessary limitations and the public is given an opportunity to present their views on decisions of the Postal Service which affect them." *Buchanan v. United States Postal Service*, 508 F.2d 259, 262 (5th Cir. 1975).

The transfer of these mail processing functions is part of a national program, commenced by the Post Office Department in 1970. The program is designed to secure more efficient and economical mail delivery as a consequence of centralized, mechanized sorting procedures. In actuality, only one step in the mail sorting process will be affected. Prior to implementation of the Marina Project, mail was delivered in bulk to local post offices after it had been sorted at a central facility according to city of destination. Each local post office then sorted the mail according to street route. The Marina Project contemplates that such sorting by route will now be performed at the Marina.

In this instance, public services will at the very least remain substantially the same. All of the local post offices in question will remain in existence; the postmasters and most of the postal employees will retain their positions; letter carriers will sort and arrange the items for delivery within their own routes, as before; the public can still purchase stamps and money orders, and register, certify or insure their mail. Plaintiffs contend that the public will be inconvenienced with longer lines at customer counters. Even if this were to be so, which appears doubtful, its significance would not be sufficient in nature or scope to render the change a consolidation.

This court is unable to conclude that the transfer of mail processing functions consti-

---

1. Plaintiffs attempted to appeal this alleged consolidation to the *Postal Rate Commission* pursuant to 39 U.S.C. § 404. The Commission expressed doubt whether it had jurisdiction over the matter absent a "determination" by the Postal Service to consolidate. Nevertheless, the Commission stated that:

"There is no indication that Congress was concerned with a consolidation of mail sorting operations. We have consistently viewed the latter as a management decision, outside the purview of this Commission."

Letter of 18 October 1977, from David F. Harris, Secretary of the Postal Rate Commission to Henry R. Fenton, Esq., Levy, Koszdin, Goldschmid & Sroloff, Suite 1020, 3550 Wilshire Boulevard, Los Angeles, California 90010.

tutes a consolidation within the intended meaning of section 404(b). To the contrary, the relocation of mail processing functions constitutes an internal managerial decision. Section 404(b) "was not intended to undermine the broad management power of the Postal Service." *Cf. N.A.A.C.P. v. United States Postal Service*, 398 F.Supp. 562, 565 (N.D.Ga.1975). The *N.A.A.C.P.* court held that transfer of the mail processing center for the city of Atlanta to a new facility did not generally affect postal services on a substantially nationwide basis and constituted a management decision, not encompassed by 39 U.S.C. § 3661.

The distinction between Postal Service managerial decisions and Postal Service decisions which affect the public and give rise to an opportunity to be heard may be made clearer by way of analogy. Plaintiffs contend that mail processing functions are an integral part of a post office. There are, however, many functions which constitute an integral part of post office operations. For example, maintaining mail trucks in good operating condition is an integral part of post office operations. During the hearing on this matter, plaintiffs conceded that a Postal Service decision to transfer a mail truck repair facility to a central location would not constitute a consolidation of post offices. If transfer of a truck repair facility is a managerial decision, then so too is a decision to transfer mail processing operations.

Moreover, Congress did not intend that transfers of mail processing functions would constitute a consolidation. Section 404(b) is intended to mitigate ". . . the potential adverse effect on the continued identity of a small community. . ." that may arise when small post offices are discontinued or consolidated. 42 Fed.Reg.

42,696 (1977). The legislative history behind section 404(b) supports this conclusion. Senator Randolph of West Virginia, sponsor of the provision which became section 404(b) stated that:

"Now the Postal Service has embarked on a new project. It has far reaching implications for rural America. Congress does not want indiscriminate closing of our rural and small town post offices. The decision has also been made to create branches out of many post offices close to large cities. This would transfer a community oriented post office into one administered through the instructions and directives of large city postmasters with little or no community involvement. This plan will erode the identity so important to people who wish to maintain a heritage of mutual interest." [2]

**B. *Any Possible Consolidation of the Inglewood Post Office Predates the Effective Date of Section 404(b)***

Plaintiffs submit another independent basis for concluding that a consolidation has occurred and that notice and a hearing are accordingly required. They argue that when a post office loses its postmaster, it becomes a postal station or branch [3] if it remains operational. If the station or branch is then made subordinate to another post office and its postmaster, a consolidation has arguably occurred. [4]

Thus, plaintiffs contend that the existence of a postmaster distinguishes a post office from a postal station or branch. Part 244.131 of the United States Post Office Manual seemingly supports this position:

"At post offices of the first, second, and third class, postmasters shall devote not less than 8 hours a day for 5 days a week to their duties." [5]

---

**2.** Hearings on S. 2844 before the Senate Comm. on Post Office and Civil Service, Part 4, 94th Cong., 2d Sess. 142 (1976).

**3.** "Stations are established within the corporate limits or boundary, and branches are established outside the corporate limits or boundary of the city, town, or village in which the main post office is located." 39 C.F.R. § 241.-2(a)(1) (1971).

**4.** 42 Fed.Reg. 42,695, n. 1 (1977).

**5.** 39 C.F.R. § 241.1(b)(1)–(4) (1971) sets forth the four classifications of post offices. The court will assume, arguendo, that Inglewood falls within one of the first three classes.

During the hearing on this matter, Mr. Wallace Kido, who holds the position entitled Sectional Center Manager/Postmaster of Inglewood, testified on behalf of the Postal Service. Mr. Kido has dual responsibilities. In addition to serving as Postmaster of Inglewood, Mr. Kido is the Sectional Center Manager. The primary function of a sectional center is to provide a hub for the concentration of mails flowing between the post offices of the sectional center. In his capacity as Sectional Center Manager, Mr. Kido has line responsibility over the twenty-one postmasters within his section.

Mr. Kido testified that implementation of the Marina Project has required that he spend virtually all of his time at the Marina in his capacity as Sectional Center Manager. Mr. Kido contended, however, that this was only a temporary condition and that he will be available in his Inglewood office for a minimum of two afternoons a week once the Marina Project is under way.

The court is impressed and indeed finds a substantial degree of merit with plaintiffs' argument. It appears beyond dispute that Inglewood is lacking a full-time postmaster. Arguably, therefore, Inglewood has been reduced to the status of a postal station or branch. Although plaintiffs request more relief than this violation would afford, I am disposed to order the Inglewood Postmaster to return to his full-time duties at Inglewood and to order compliance with the requisites of section 404(b) before the Inglewood Post Office is consolidated with the Marina Facility.

However, it appears that the apparent consolidation of the Inglewood Post Office occurred prior to the effective date of section 404(b). Mr. Kido also testified that since 1971, his dual responsibilities have necessitated that he occupy offices at two separate locations in Inglewood. Further, he had been available in his Postmaster's office at least two afternoons per week but certainly less than five days per week. Section 404(b) became effective sometime be-

tween the date that section 404 was amended, on September 24, 1976,[6] and the latest date upon which the Commission on Postal Services was to transmit its final report to the President and each House of Congress, March 15, 1977.[7]

Since Inglewood ostensibly lost its Postmaster as early as 1971, any possible consolidation of the Inglewood Post Office predates the effective date of section 404(b). Accordingly, plaintiffs may not avail themselves of the relief provided by that section, absent a showing that the statute was intended to have a retroactive effect.

## II. IMPLEMENTATION OF THE MARINA PROJECT WILL NOT GENERALLY AFFECT POSTAL SERVICES ON A SUBSTANTIALLY NATIONWIDE BASIS

■ Plaintiffs argue that the Marina Project will cause a deterioration in mail services. Arguably, the effect will be felt nationwide since more than 1.6 million persons and thousands of businesses reside in the affected region. This court is unable to agree with plaintiffs' contention.

Prior to implementing any "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," the Postal Service must request an advisory opinion regarding the change from the Postal Rate Commission. 39 U.S.C. § 3661(b). The opinion may not issue until the Commission provides an opportunity for a public hearing. 39 U.S.C. § 3661(c). It is undisputed that plaintiffs have not been accorded a hearing and an advisory opinion has not been requested.

Three factors must coexist before the statute applies:

"First, there must be a 'change.' This implies that a quantitative determination is necessary. There must be some meaningful impact on service. Minor alterations which have a minimal effect on the

---

**6.** Postal Reorganization Act Amendment of 1976, Pub.L. No. 94–421, § 9(b), 90 Stat. 1311.

**7.** Postal Reorganization Act Amendment of 1976, Pub.L. No. 94–421, § 7(f)(1), 90 Stat. 1309.

general class of postal users do not fall within § 3661. Second, the change must be 'in the nature of postal services.' This involves a qualitative examination of the manner in which postal services available to the user will be altered. *Third, the change must affect service 'on a nationwide or substantially nationwide basis.' A broad geographical area must be involved.*" *Buchanan v. United States Postal Service*, 508 F.2d 259, 262–63 (5th Cir. 1975) (emphasis supplied).

The transfer of mail processing functions from one facility to another does not affect postal services "on a nationwide or substantially nationwide basis." *N.A.A.C.P. v. United States Postal Service*, 398 F.Supp. 562 (N.D.Ga.1975). In this instance, the transfer of mail processing functions merely affects the western region of Los Angeles County. That is a far cry from affecting postal services on even a substantially nationwide basis.

Notwithstanding all of the foregoing, plaintiffs are not left without a remedy. Section 3662 of Title 39 of the United States Code provides, in part, that:

"Interested parties . . . who believe that they are not receiving postal service in accordance with the policies of this title may lodge a complaint with the Postal Rate Commission in such form and in such manner as it may prescribe. The Commission may in its discretion hold hearings on such complaint."

For the foregoing reasons, plaintiffs' application for a preliminary injunction is denied. This opinion shall constitute findings of fact and conclusions of law, as authorized by Rule 52(a) of the Federal Rules of Civil Procedure.