Carol **KNAPP**, Leonard **Stronski**, Sally **Halleck**, Charles **Watts**, Loraine **Borst** and Edward **Kane**, for themselves and all others similarly situated, and the Detroit District Area Local, American Postal Workers Union, AFL–CIO, Plaintiffs,

and

Donna **Welcher**, Debby **Hanewich**, Geri **Chmielewski**, and Virginia **Buxton**, for themselves and all others similarly situated, and the Detroit District Area Local, American Postal Workers Union, AFL–CIO, Intervening Plaintiffs,

v.

**UNITED STATES POSTAL SERVICE,** (USPS), Defendant.

Civ. A. No. 7–72955.

United States District Court, E. D. Michigan, S. D.

Jan. 12, 1978.

Charles Looman, Jr., Flint, Mich., for plaintiffs.

Timothy Downs, Farber & Downs, Detroit, Mich., for intervening plaintiffs.

Thomas M. Woods, Asst. U. S. Atty., Detroit, Mich., Robert P. Henderson, Sr. Asst. Regional Labor Counsel, Law Dept., U. S. Postal Service, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action brought under Section 404 of the Postal Reorganization Act of 1970, as amended, 39 U.S.C. § 404, to enjoin the United States Postal Service from transferring certain major substantial bulk and other sorting operations presently performed in Dearborn, Warren, Rochester, Taylor, and Livonia to other postal facilities until such time as the procedural requirements allegedly imposed by § 404(b) have been satisfied. The defendant admits that it has not complied with the procedural requirements of § 404(b) and asserts that it is not required to do so.

Plaintiffs and intervening plaintiffs are residents of this judicial district, each of whom is served by one of the five post offices in question, the Detroit District Area Local of the American Postal Workers Union, and 480–481 Area Local of the American Postal Workers Union, AFL–CIO.* Although plaintiffs have made allegations of class status in their complaint, no evidence has been received by the court nor

* Due to the holding on the merits of this case with respect to the non-union plaintiffs, the issue of the standing of the unions to bring this action is not addressed in this opinion and

has any argument been heard in support of these allegations. Therefore, this court acknowledges only those persons named in the pleadings to be parties in this case. Trial of this action on the merits was advanced and consolidated with the hearing of the application for a preliminary injunction pursuant to F.R.C.P. 65(a)(2).

The following provisions of the statutes have a bearing on the determination of this case.

Section 101 of 39 U.S.C. provides in part:

"(a) . . . The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people. . . .

"(b) The Postal Service shall provide a maximum degree of effective and regular postal services to rural areas, communities, and small towns where post offices are not self-sustaining. No small post office shall be closed solely for operating at a deficit, it being the specific intent of the Congress that effective postal services be insured to residents of both urban and rural communities.

\* \* \* \* \* \*

"(e) In determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail.

"(f) In selecting modes of transportation, the Postal Service shall give highest consideration to the prompt and economical delivery of all mail and shall make a fair and equitable distribution of mail business to carriers providing similar modes of transportation services to the Postal Service. Modern methods of transporting mail by containerization and pro-

nothing contained in the opinion should be construed as intimating this court's views on that issue.

grams designed to achieve overnight transportation to the destination of importation letter mail to all parts of the Nation shall be a primary goal of postal operations."

Section 403(b)(1) of 39 U.S.C. provides: "It shall be the responsibility of the Postal Service—(1) to maintain an efficient system of collection, sorting, and delivery of the mail nationwide."

Section 404 of 39 U.S.C. provides in part:

"(a) Without limitation of the generality of its powers, the Postal Service shall have the following specific powers, among others:

(1) to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail;

\* \* \* \* \* \*

(3) to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities, and equipment as it determines are needed;

\* \* \* \* \* \*

"(b) (1) The Postal Service, prior to making a determination under subsection (a)(3) of this section as to the necessity for the closing or consolidation of any post office, shall provide adequate notice of its intention to close or consolidate such post office at least 60 days prior to the proposed date of such closing or consolidation to persons served by such post office to ensure that such persons will have an opportunity to present their views.

(2) The Postal Service, in making a determination whether or not to close or consolidate a post office, shall consider—

(A) the effect of such closing or consolidation on the community served by such post office;

(B) the effect of such closing or consolidation on employees of the Postal Service employed at such office;

(C) whether such closing or consolidation is consistent with the policy of the Government, as stated in section 101(b) of this title, that the Postal Service shall provide a maximum degree of effective and regular postal services to rural areas, communities, and small towns where post offices are not self-sustaining;

(D) the economic savings to the Postal Service resulting from such closing or consolidation; and

(E) such other factors as the Postal Service determines are necessary.

(3) Any determination of the Postal Service to close or consolidate a post office shall be in writing and shall include the findings of the Postal Service with respect to the considerations required to be made under paragraph (2) of this subsection. Such determination and finding shall be made available to persons served by such post office.

(4) The Postal Service shall take no action to close or consolidate a post office until 60 days after its written determination is made available to persons served by such post office."

During the latter part of 1977, the United States Postal Service made known publicly its intention to relocate the bulk mail sorting operations for several Detroit metropolitan area post offices in an effort to fully utilize the available letter sorting machines and minimize manual mail sorting. Pursuant to their respective specific relocation plans, the bulk mail sorting operations of the Warren, Rochester, Taylor, and Livonia post offices, heretofore manually performed, are scheduled to be transferred to other facilities which have the capacity to mechanically sort the same mail according to letter carrier routes. Once sorted the same mail would then be returned to the post office from which it came for distribution as in the past. In addition to having most of its manual mail sorting operations transferred in the manner described above,

the Dearborn post office will have the letter sorting machine it now uses transferred to another postal facility in order to consolidate the mechanical letter sorting operations and to enable the Dearborn post office to consolidate its letter carrier operations in the space formerly occupied by the manual and mechanical letter sorting operations.

A collateral effect of all of these transfers of bulk mail sorting operations is the transfer of clerical personnel involved in the mail sorting operations, members of the union plaintiffs, from the post offices in question to the new mail sorting locations. In the most extreme instances, clerical personnel constituting close to fifty percent of all post office personnel will be transferred as far as fifteen miles from Rochester to Royal Oak, Michigan. However, these transfers of sorting functions and clerical personnel will not result in loss of jobs or reduction in quality or frequency of any services now provided to citizens served by the post offices in question. Each post office will retain all other functions and all other personnel, including their postmaster, not connected with the bulk mail sorting operations. Thus, from the perspective of the customer of the post office, it will appear as though no change had occurred in the functioning of the post office.

Plaintiffs assert that the transfers of bulk mail sorting operations described herein constitute closings or consolidations within the contemplation of 39 U.S.C. § 404(b) and seek relief in the form of an order requiring the Postal Service to comply with § 404(b) prior to transferring the bulk mail sorting operations in question on the theory that the transfers of the mail sorting activities constitute "closing" or "consolidation" of the post offices.

The narrow issue presented for resolution is whether the transfers of substantial bulk mail sorting operations from the post offices in question to other postal facilities constitutes a "closing" or "consolidation" within the contemplation of 39 U.S.C. § 404(b). By definition factors relating to the wisdom of the transfers are not relevant to the characterization of the transfers

as "closings" or "consolidations." For reasons set forth more fully herein, this court finds that the transfers of substantial bulk mail sorting operations in question do not constitute "closings" or "consolidations" within the contemplation of 39 U.S.C. § 404(b). Therefore, plaintiffs' and intervening plaintiffs' applications for preliminary and permanent injunctions are denied.

Section 404(b) is new to the statute having been adopted by the Congress in 1976. Before that time, it was clear that Congress intended that the Postal Service had full power to provide postal services to the people of this country as efficiently and as economically as possible. 39 U.S.C. § 101(e) and (f); 39 U.S.C. § 403(b)(1). However, litigation arose over the power of the Service to close post offices and courts upheld the Service's efforts to be efficient and economical, even if that meant closing a post office. *City of Rossford v. Klassen*, 359 F.Supp. 1036 (N.D.Ohio 1973). As a result, Senator Randolph of West Virginia proposed, and Congress adopted, Section 404(b) to specifically limit the Postal Service's power given under Section 404(a)(3) to close or consolidate post offices by requiring the consideration of specific matters, the making of specific findings, and that no action be taken for a limited time after notice of the determination to close or consolidate is given.

Senator Randolph, when he proposed the legislation destined to become 39 U.S.C. § 404(b) on the floor of the Senate, made it clear that his interest was to deal with the problem of the physical closure of a post office or the physical consolidation of post offices, particularly as this relates to postal services in rural areas, when he related this amendment to policy statement of the Act, Section 101(b), giving policy direction pertaining to the closing of post offices. Senator Randolph specifically criticized the Postal Service for "overlooking" § 101(b). Hearings on S. 2844 Before the Senate Comm. on Post Office and Civil Service, Part 4, 94th Cong., 2d Sess. 142–143 (1976). ("Hearings"). The Senator specifically objected to the "indiscriminate closing of our

rural and small town post offices" as well as the decision by the Postal Service to "create branches out of many post offices close to large cities" and thus "transfer a community oriented post office into one administered through the instructions and directives of large city postmasters with little or no community involvement." *Hearings, supra,* at 142.

■ The type of "closing" and "consolidation" which induced Senator Randolph to introduce the bill that became § 404(b) is the same type of "closing" and "consolidation" addressed by § 101(b) and, evidently, is the same type of "closing" and "consolidation" to which § 404(b) should be construed to refer. "Closing" thus refers to the complete elimination of the post office. "Consolidation", while more difficult to describe, certainly has the characteristic of subordinating the day to day overall management of one office having a postmaster to the administrative personnel of another office. Given the prospect of adverse impact on the populace of the postal community of such a closing or consolidation, it makes perfect sense to accord affected postal customers the right to notice and a hearing prior to the consolidation as § 404(b) requires.

■ Unlike the concept of consolidation just discussed, the transfers of bulk mail sorting operations contested in this case do not involve the subordination of the management of one post office to another. Postal customers will not be affected by these transfers. Indeed, due to the continuation of all postal services rendered to the public at each of the post offices in question, the public would not know whether the bulk mail sorting operations were being performed at the post office as was the case, were being transferred to a different facility, or were even being performed on a train enroute to the destination of the mail being sorted as such services were once performed. Thus, the transfers of bulk mail sorting operations from the post offices in question do not constitute closing or consolidations within the contemplation of 39 U.S.C. § 404(b).

A second reason why the type of activity challenged in this case does not fall within the requirements of § 404(b) is the difference in the language used in that section when compared to the sections granting power to the Postal Service. Sections 403(b)(1) and 404(a)(1) and (3) and the sections limiting the use of a portion of that granted power, §§ 403(b)(1) and 404(a)(1), charge the Postal Service with maintaining an efficient system of collection, sorting and delivery of mail and specifically empower the Service to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and to determine the need for post offices and equipment and to provide such offices, facilities and equipment as it determines is needed. Section 404(b) limits this broad grant of power only "as to the necessity for the closing or consolidation of any post office." The language of limitation in § 404(b)(1) is much narrower than the grant of power.

It seems clear to the court that the choice by Congress to limit the use of power only in the areas of "closing" and "consolidation" "of any post office" should cause the courts to interpret "closing" and "consolidation" "of any post office" differently than the acts of collection, handling, sorting, and transportation of mail. It is only these later acts that are involved in this case.

Finally, the acts charged are simply management decisions as to how mail is to be sorted. The same mail, incoming and outgoing, will go through the respective post offices. The same services to the public will be provided. The only difference is that the mail will come to the post office sorted rather than having to be sorted in the post office. This court does not intend to make management decisions for the Postal Service, and how and where mail is sorted is such a decision. This conclusion is virtually identical in all pertinent respects to those of other federal district courts. *E.g., Wilson, et al. v. United States Postal Service,* 441 F.Supp. 803 (C.D.Cal.1977).

For the above stated reasons:

1. The statute, 404(b), limiting the Service's power as to closing and consolidation of post offices was not intended by Congress to apply to the transfer of sorting activities.

2. A clear reading of the Act as it now stands distinguishes between the power granted to perform the kinds of activities involved in this case and a "closing" or "consolidation" for which specific procedural acts are required to be taken before a post office can be closed or consolidated.

3. The acts challenged are merely management decisions to carry out the policy of Congress to operate the Postal Service as efficiently, promptly and reliably as possible.

This court denies the plaintiff's request for an injunction to prohibit the defendant's proposed action without complying with the procedures of 39 U.S.C. § 404(b).

So ordered.

