**CITIZENS FOR THE HOPKINS POST OFFICE, an Unincorporated Association, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. No. 3:91–3431–21.

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 25, 1993.

Herbert W. Louthian, Columbia, SC, for plaintiff.

John B. Grimball, Asst. U.S. Atty., Columbia, SC, for defendant.

### *ORDER*

TRAXLER, District Judge.

This matter is before me as a nonjury trial in which the plaintiffs seek an order of this court directing the defendant (Postal Service) to return seven postal carriers and a postal clerk to the Hopkins Post Office from which they had been reassigned.[1]  I find for the defendant.

---

1. There has been prior litigation between the parties which resulted in a preliminary injunction from the Honorable Matthew J. Perry, Jr., United States District Judge, prohibiting the Postal Service from moving the current post office at Hopkins to a new location where con-struction was already under way. Following termination of the construction contract between the Postal Service and the contractor, the injunction was vacated and that action dismissed by court order on May 12, 1989. (See Civil Action No. 3:89–0317–0 (D.S.C.).)

## FINDINGS OF FACT

The plaintiffs in this case are members of an unincorporated community association of residents in Hopkins, South Carolina. Hopkins is a small, unincorporated community located in Richland County, approximately ten miles southeast of Columbia. The area is comprised primarily of small farms and other rural residential properties.

The Hopkins community is served by the Hopkins Post Office which is located near the center of the community. A post office has existed in Hopkins for over 100 years and is considered an important part of community life. The current building housing the post office itself is small, as is evidenced by a sketch of the existing floor plan (Def.'s Ex. 1) and photographs of the post office (Def.'s Exs. 7–12).

The area serviced by the Hopkins Post Office has grown over the past several years. In 1982, there were four rural routes serviced from the post office. There are now seven routes for this area, and the postal services required in the community have outgrown the Hopkins Post Office building. The increase in the volume of mail, the increase in the number of routes, and the increase in the number of carriers having to sort mail for delivery at the Hopkins Post Office has caused problems not only in the delivery of these services, but also in the delivery of other services normally associated with post office operations.

The biggest problem which developed at the Hopkins Post Office concerned the mail-casing operation for the rural route mail deliveries. A casing operation is basically the manual sorting of the mail for rural route delivery, and at Hopkins it involved, of necessity, a mail clerk, the eight rural route carriers, and large mail cases. This operation occurred every morning with the exception of Sundays and holidays. The congestion caused at the small Hopkins Post Office by the size of the casing activity reached an unreasonable level, and in November 1991 the Postal Service relocated seven carriers and one mail clerk, along with their equipment and casing operation, to the Leesburg postal facility where more space was available for the operation. The Leesburg Post Office, which is a station of the Columbia Post Office, is located approximately seven miles from the Hopkins Post Office.

Supervision of these employees remained with the Hopkins Postmaster, who was also responsible for their evaluation and their payroll.[2] As a result of this move, the carriers and clerk obtained and now have adequate space in Leesburg to conduct their mail-casing, and the Hopkins Post Office was able to add additional post office boxes inside, while the services to Hopkins postal customers have continued at generally the same level.

The actual casing of the mail is a process with which the public has no contact. It involves only the sorting and preparation of the mail for delivery on the routes. Even viewing the testimony concerning this operation in the light most favorable to the plaintiffs, the only effect of this move on the public has been delivery of the mail to residents' homes a little later than before the move. As far as the operation of the Hopkins Post Office itself is concerned, there were complaints that the placing of the mail in the post office boxes was later in the morning than before and that the hours of operation on Wednesdays and Saturdays were shorter than before.[3]

The relocation of the mail casing operation to the Leesburg Post Office resulted in the transfer of eight individuals from the Hopkins Post Office. A prior transfer of one mail carrier to the Gadsden Post Office had been previously accomplished because of the admitted practicality of transferring the basis of his operations to an area more closely located to his delivery area. Likewise there

2. There are presently plans to transfer the administrative responsibilities of these employees to the Columbia Post Office.

3. This post office, as a matter of custom, closed early on Wednesdays and Saturdays. The complaint is that on these days the post office is now open fewer hours than before. Although the reduction in hours was originally the result of budget cutting efforts, it now appears the hours of operation on Wednesday and Saturday are a matter of personal preference of the Postmaster of Hopkins.

had been a prior transfer of a postal clerk to the Columbia Post Office at the request of the clerk. The postmaster, Ms. Henry, is now the sole postal employee at the Hopkins Post Office.

## CONCLUSIONS OF LAW

Jurisdiction of this matter is properly before this court pursuant to 39 U.S.C. § 409.

Title 39 U.S.C. § 404 provides in pertinent part as follows:

(a) Without limitation of the generality of its powers, the Postal Service shall have the following specific powers, among others:

(1) to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail;

. . . .

(3) to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities, and equipment as it determines are needed;

. . . .

(b)(1) The Postal Service, prior to making a determination under subsection (a)(3) of this section as to the necessity for the closing or consolidation of any post office, shall provide adequate notice of its intention to close or consolidate such post office at least 60 days prior to the proposed date of such closing or consolidation to persons served by such post office to ensure that such persons will have an opportunity to present their views.

The plaintiffs contend that the actions taken by the Postal Service constitute a consolidation of the Hopkins Post Office with another post office, thereby entitling them to administrative notice, an opportunity to present the views of the community, and a right to administrative appeal under 39 U.S.C. § 404(b). The plaintiffs are concerned that the transfer of the mail-casing operation is a prelude to the closing of their post office, and they commendably support the continued presence of a post office in Hopkins.[4] The Postal Service takes the position that its actions are operational in nature and do not fall within the purview of § 404(b). The question, then, for this court is whether the transfer of the mail-casing operation constituted a consolidation within the meaning of § 404(b). This court does not have the expertise or the authority to determine the wisdom of such a move. For the court the question is only a legal one, and resolution of this issue must proceed upon traditional principles of statutory interpretation.

The first inquiry for the court is to determine "whether Congress has directly spoken to the precise question at issue." *Chevron USA, Inc. v. NRDC,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). To determine the intent of Congress, the court must view the statutory language at issue along with that of the statute as a whole. *K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). If the intent of Congress is clear, it must be given effect. *Chevron* at 842–43, 104 S.Ct. at 2192–93. If the meaning of the statute is not clear, deference must be had to the agency's interpretation of the statute so long as it is reasonable and consistent with the purpose of the statute. *Id.* at 844–45, 104 S.Ct. at 2193–94.

The term "consolidation" as used in § 404(b) is not defined in the statute. Consequently, this court will begin with the principle that the construction placed on a statute by the agency charged with administering it is entitled to considerable deference and should be upheld if reasonable. *Shanty Town Associates Limited Partnership v. EPA,* 843 F.2d 782, 790 (4th Cir.1988) ("So long as the agency's interpretation represents a reasonable accommodation of conflicting policies that were committed to its care by the statute, we are not at liberty to reject it merely because we might have reached a

---

4. The court notes that Myles Dewey, Director of Field Operations for the Columbia Post Office, testified under oath there were no plans to close the Hopkins Post Office and that he would not close it because it is too big to close. Ms. G.R. Coleman, now District Manager for Customer Services, likewise testified there were no plans to close the Hopkins Post Office and that she is of the opinion it should not be closed.

different conclusion if confronted with the issue in the first instance.").

A court is not obligated to accept every interpretation offered by an administering agency, because courts remain the ultimate arbiters on issues of statutory construction. *Id.* This court will accord an agency's interpretation the deference to which it is entitled, but it will not abrogate its responsibility to deny an interpretation which is inconsistent with a statutory mandate or which would frustrate the congressional policy underlying the statute. *Id.* The responsibility of the court is to determine whether, from the structure of this statute and its legislative history, it is clear that the Postal Service's interpretation of the statute is not one that would have been sanctioned by Congress. *Id.*

■ The United States Postal Service's "Post Office Discontinuance Guide" (Def.'s Ex. 2) defines "consolidation" as "an action which converts a postal facility into a contracted community post office or classified contract station or branch. The CPO contractor, station or branch manager reports to an administrative office." *Id.* at 192[5] This court finds the definition of "consolidation" advanced by the Postal Service to be one which is reasonable and in keeping with the intent of Congress in this statute. It clearly defines "consolidation" as an action in which a post office would lose its independence and individual identity. It is the opinion of this court that such an action, as defined by the Postal Service, is clearly the type of action Congress intended to trigger the operation of § 404(b).

■ Additionally, there is independent judicial precedent for a definition of "consolidation" which would be consistent with the position taken by the Postal Service and consistent with this court's finding that there has been no consolidation in this case. In *Knapp v. United States Postal Service,* 449 F.Supp. 158 (E.D.Mich.1978), the court stated: " 'Consolidation,' while more difficult to describe, certainly has the characteristic of subordinating the day-to-day overall management of one office having a postmaster to the administrative personnel of another office." *Id.* at 162. Under this definition, it is clear that there has been no consolidation because the Hopkins postmaster continues to operate the post office and to be responsible for the day-to-day management of that office, albeit she is the only employee there.

■ There are additional factors to take into account to show there has been no consolidation. As in *Knapp,* the continuity of postal services rendered to the public at the Hopkins Post Office has not changed. With the possible exception of a minor delay in delivery occasioned only by the seven-mile difference in distance between Hopkins and Leesburg, the public would not know whether the mail-casing operation was occurring in Hopkins or in Leesburg. *Knapp* at 162. Also, the Postal Service is given significant leeway, within limits, to determine the appropriate methods to be used for the collection, handling, transportation, delivery, and other services regarding the mail. 39 U.S.C. §§ 403(b)(1) and 404(a)(1); *Knapp* at 162. The powers given the Postal Service by Congress include decisions of the nature made in this case. This court is also of the opinion that the decision regarding mail-casement is a managerial decision and one more properly within the province of the Postal Service. *Id.*

The Hopkins Post Office continues to remain in existence. Services at the post office itself have been increased by the addition of more post office boxes. The public can still obtain all of the services at the Hopkins Post Office that they could prior to the transfer of the mail-casing operation. These are factors which are important in determining whether

5. "Contract station" is defined as "A contract postal unit (CPU) operated under the administration of an independent post office. The name of the station is generally not used as the city name in the last line of the address." *Id.*

"Classified branch" is defined as "A unit operated by postal personnel under the administration of an independent post office. The branch name is generally used in the last line of the address." *Id.* at 191.

"Classified station" is defined as "A unit operated by postal personnel under the administration of an independent post office. The name of the station is generally not used as the city name in the last line of the address." *Id.*

or not there has been a consolidation. *Wilson v. United States Postal Service,* 441 F.Supp. 803, 805 (C.D.Cal.1977).

Therefore, it is the finding of this court that the transfer of the mail-casing operation and the employees involved therein from the Hopkins Post Office to the Leesburg Post Office did not constitute a consolidation within the meaning of 39 U.S.C. § 404(b). Since the plaintiffs cannot succeed on the merits of their case, they are not entitled under the law to the injunction they seek.

**THEREFORE, IT IS ORDERED** that verdict be entered for the United States Postal Service.

**IT IS SO ORDERED.**