John H. BUCHANAN, Jr., et al., Plaintiffs-Appellees,

v.

UNITED STATES POSTAL SERVICE, etc., et al., Defendants-Appellants.

Nos. 74–2851 and 74–3214.

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1975.

Wayman G. Sherrer, U. S. Atty., Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., Roger Craig, Deputy Gen. Counsel, Law Dept., Washington, D. C., Neil H. Koslowe, Robert E. Kopp, App. Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendants-appellants.

William G. Somerville, Jr., John E. Grenier, Birmingham, Ala., for plaintiffs-appellees.

Before THORNBERRY, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This first impression case was brought by three Congressmen who sue on behalf of a class composed of numerous users, located throughout the United States, of the United States Postal Service. The Postal Service was created as an independent establishment of the executive branch of the government by the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101–5605, and generally performs functions formerly carried out by the Post Office Department. The controversy centers upon previously uninterpreted language of 39 U.S.C. § 3661:

(a) The Postal Service shall develop and promote adequate and efficient postal services.

(b) When the Postal Service determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable time prior to the effective date of such proposal, to the Postal Rate Commission requesting an advisory opinion on the change.

(c) The Commission shall not issue its opinion on any proposal until an opportunity for hearing on the record under sections 556 and 557 of title 5 has been accorded to the Postal Service, users of the mail, and an officer of the Commission who shall be required to represent the interests of the general public. The opinion shall be in writing and shall include a certification by each Commissioner agreeing with the opinion that in his judgment the opinion conforms to the policies established under this title.

Suit was filed April 30, 1974. The complaint, as amended, asked that pending hearings before the Postal Rate Commission and advisory opinions by that body the court enjoin implementation of three Postal Service programs.

The Postal Service is in the process of implementing three programs which plaintiffs contend are "change[s] in the nature of postal services which will generally affect service on a nationwide or

substantially nationwide basis" within the meaning of subsection (b) and thus required to be submitted to the Postal Rate Commission [1] for hearings and advisory opinions as required by (b) and (c). Opinions of the Rate Commission are, as the statute states, advisory only. The Postal Service is not required to follow them. The Postal Service has not submitted the programs to the Rate Commission. The programs are: (1) a plan to consolidate and eliminate "district offices" throughout the United States; (2) the retail analysis program ("RAP"); [2] and (3) the "national bulk mail system" program.

Discovery commenced promptly after suit was filed. Following a hearing on May 11 the court issued a temporary injunction on May 14 finding with respect to RAP and consolidation of district offices that plaintiffs probably would prevail in demonstrating that they were "change[s] in the nature of postal services" within the meaning of § 3661 and that plaintiffs would suffer irreparable injury if the preliminary injunction were not issued. With respect to the national bulk mail system program the court found § 3661 inapplicable because "in all likelihood" the decision to implement it had been made before July 1, 1971, the date the Postal Reorganization Act became effective. Defendants appeal from these grants of relief and from the order of the District Court denying their motion for summary judgment.[3]

### I. § 3661: "changes in the nature of postal services"

The central issue is the meaning of "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis." We examine that language in the light of the purposes and legislative history of § 3661.

Two of the basic policies underlying the Postal Reorganization Act pull in different directions. The Postal Service emphasizes the goal of vesting in management the freedom to make decisions without external constraints. The plaintiffs counter with the goal of providing to the American people a public service which is sensitive and responsive to their needs. Although these policies conflict to some extent, we think a balance may be struck whereby management is given the freedom to manage without unnecessary limitations and the public is given an opportunity to present their views on decisions of the Postal Service which affect them.

The language of the statute, the legislative history, and the existence of alternative remedies indicate that Congress intended § 3661 to apply to only a specified class of decisions. Postal management was left with broad decision-making power, subject to § 3661 requirements for specified decisions.

The language of § 3661 indicates the limited scope of application. All changes within the Service will probably affect postal service to some extent. For example, a decision to combine two high management positions could ultimately have an effect on a nationwide or substantially nationwide basis. The language of the statute, however, indicates that three factors must coexist before § 3661 applies. First, there must be a "change." This implies that a quantitative determination is necessary. There must be some meaningful impact on service. Minor alterations which have a minimal effect on the general class of postal users do not fall within § 3661. Second, the change must be "in the na-

---

1. The Postal Rate Commission consists of five commissioners appointed by the President. 39 U.S.C. § 3601. The principal functions of the Commission are to submit recommendations to the Postal Service concerning changes in rates and fees, 39 U.S.C. § 3622, and in the mail classification schedule, 39 U.S.C. § 3623.

2. Also referred to as the "postal facilities deployment" program. There is testimony im-

plying that there are in fact two programs and that these are not simply two labels for the same program. See discussion *infra*.

3. The grant of temporary injunctive relief is, of course, appealable under 28 U.S.C. § 1292(a)(1). The District Court certified the denial of summary judgment for interlocutory appeal under 28 U.S.C. § 1292(b), and we accepted the appeal.

ture of postal services." This involves a qualitative examination of the manner in which postal services available to the user will be altered. Third, the change must affect service "on a nationwide or substantially nationwide basis." A broad geographical area must be involved. These three factors combine to demonstrate that Congress intended the safeguards of § 3661 to apply only when changes of significance were contemplated.

■ There is much in the legislative history of the Act to indicate that Congress intended to increase the ability of the Postal Service management to make the decisions necessary to the efficient and effective operation of the postal system. For example, the Kappel Commission [4] emphasized the need for increased management authority:

> What the Post Office needs is management leadership. It needs a management free to manage with all that entails; authorities matched with responsibilities . . . [5]

Similarly the House Committee, recommending the passage of an earlier version of the Act stated:

Top management must be given authority, consistent with its responsibilities, to provide an efficient and economical postal system. Postal management has been severely and unjustly hampered in its efforts to administer the Department in a businesslike way.[6]

A policy of broad authority in postal management is further supported by modifications made by the Senate-House Conference Committee. An early House version had included provisions which made the opinion of the Postal Rate Commission binding on the Postal Service,[7] established an administrative procedure for changes of less than a nationwide impact, and provided for judicial review.[8] In the Act as agreed upon by the Conference Committee and passed by the Congress, these three provisions were eliminated. These deletions demonstrate congressional concern with minimizing the hurdles in the path of a postal management decision.[9] To place a broad and expansive interpretation on the reach of § 3661 would be inconsistent with this expression of congressional will.

The third factor supporting a policy of broad management power and an unex-

---

4. The presidentially appointed commission which investigated the Post Office Department and made recommendations on the basis of that investigation. *See* The President's Commission on Postal Organization, Towards Postal Excellence (1968) [hereinafter "Kappel Commission Report"].

5. Kappel Commission Report at 63.

6. H.R.Rep. No. 91–1104, 91st Cong., 2d Sess. (1970) at 5, 1970 U.S.Code Cong. & Admin. News at 3653. We recognize that nothing in § 3661 prevents the Postal Service from making any decision which it deems best. However, the procedures mandated by § 3661 are sufficiently elaborate to amount to a significant impediment in the path of the decision making process of the Postal Service. We therefore find these expressions of congressional intent relevant to our interpretation of § 3661.

7. The Commission's decision could, however, be overruled by the presidentially appointed Board of Directors of the Postal Service.

8. *See* H.R. 11750, 91st Cong., 1st Sess. (1969) (proposed 39 U.S.C. §§ 1255, 1257). These provisions, with only minor modifications,

were retained in H.R. 17070, 91st Cong., 2d Sess. (1970).

9. The Committee also made public hearings mandatory as opposed to optional (at the Board's discretion) as proposed in the House bill. Although this change indicates a concern with broad public input, it does not alter our overall analysis of the changes adopted by the Committee.

The House bill provided for public notice and opportunity for public comment when the Postal Service proposed a "change in the type, quality, terms or conditions of any services provided by the Postal Service which substantially affects a postal service provided to users on a nationwide or nearly nationwide basis." H.R. 11750, 91st Cong., 1st Sess. (1969) (proposed 39 U.S.C. § 1255). The Postal Service finds significance in the Conference Committee's change from this language to the present language of § 3661. We find nothing in this change to indicate support for either plaintiffs' or the Postal Service's position. The new language was essentially the equivalent of the language abandoned and there is nothing to indicate that the Committee attached significance to the change.

pansive interpretation of § 3661 is the existence of § 3662.[10] This provides that any "[i]nterested parties who believe . . . that they are not receiving postal service in accordance with the policies of this title" may lodge a complaint and obtain a hearing with the Postal Rate Commission if the Commission feels it is warranted. Section 3662 complements § 3661, and together they form a harmonious scheme. For those "changes" which do not fall within § 3661, the postal user may turn to § 3662 if the change does in fact affect his postal service.[11] Although § 3662 is a more limited remedy, it insures that an unexpansive interpretation of § 3661 will not leave remediless the postal user dissatisfied by changes that do not rise to the level of those covered by § 3661.

The plaintiffs urge that Postal Service management intends to construe its managerial powers so expansively as to swallow up § 3661 or reduce it to impotence, pointing out that in the four years the Act has been in effect the Service has never invoked § 3661. Our unwillingness to accept the very broad interpretation urged by plaintiffs should not be construed as foreclosing a significant and viable scope of operation for § 3661.

### II. The denial of summary judgment

■ We agree with plaintiffs that substantial factual disputes exist which

must be resolved before it is possible to determine whether any of the three programs is in fact a "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis." Summary judgment in favor of defendants was properly denied. We discuss each program separately.

### A. The consolidation of district offices

The Postal Service in July 1971 was organized in the following manner:

Office of Postmaster General
|
5 regional offices
|
86 district offices
|
36,632 local post offices ———— 552 sectional centers [12]

The regional and district offices move no mail and provide no services to postal customers. By comparison the sectional centers are terminals for the distribution and receipt of mail. The Postal Service in 1972 determined that more management authority should be vested in the sectional centers. As this is done, the number of district offices will be reduced through consolidation and eventually all district offices may be eliminated.[13] Plaintiffs and the Postal Service disgree as to whether this program to eliminate

---

**10.** 39 U.S.C. § 3662 provides:

"Interested parties who believe the Postal Service is charging rates which do not conform to the policies set out in this title or who believe that they are not receiving postal service in accordance with the policies of this title may lodge a complaint with the Postal Rate Commission in such form and in such manner as it may prescribe. The Commission may in its discretion hold hearings on such complaint. If the Commission, in a matter covered by subchapter II of this chapter, determines the complaint to be justified, it shall, after proceedings in conformity with section 3624 of this title, issue a recommended decision which shall be acted upon in accordance with the provisions of section 3625 of this title and subject to review in accordance with the provisions of section 3628 of this title. If a matter not covered by subchapter II of this chap-

ter is involved, and the Commission after hearing finds the complaint to be justified, it shall render a public report thereon to the Postal Service which shall take such action as it deems appropriate."

**11.** This is not to indicate, of course, that a change is necessary in order to invoke § 3662. That section is available whenever a user believes that service is not being provided in accordance with the policies of Title 39.

**12.** The number of post offices and sectional centers does not appear from the record. The Postal Service has supplied the above figures in their brief and we accept them for purposes of discussion.

**13.** It is not clear whether the goal is to eliminate all district offices, but whether it is or not is unimportant here since there is a nationwide program of substantial elimination and consolidation of district offices.

and consolidate district offices is a "change in the nature of postal services." [14]

The Postal Service contends that the district offices are solely managerial and that their elimination and consolidation in no way changes the nature of services received by postal customers.[15] It points out that a district office is generally composed of four or five management employees [16] and that rearranging the location and organization of such employees is a classic management decision. Plaintiffs, however, argue that the function of district offices is not clear and that they have significant direct responsibility for postal services, so that the consolidation of district offices is a change in the nature of postal services.[17] The exact functions of the employees in district offices are the subject of dispute, and the effect upon the nature of postal services by moving a district office from one place to another is unclear.

### B. The retail analysis program

The Postal Service describes RAP as simply a program whereby a particular geographical area is analyzed to determine whether present postal stations and branches exist in the best number and arrangement to provide effective service to the postal users within that geographic area. The Postal Service emphasizes that this program for providing information is used only at the request of the local postmaster, who may or may not consider any information provided by RAP in making decisions regarding the number, location and types of facilities to be provided in his area. Consequently, the Postal Service says, there is no change in the nature of postal services since RAP changes nothing and only provides information.[18]

Plaintiffs, however, refer to RAP as the "postal facilities deployment" program. They contend that more than information gathering is involved, that the "postal facilities deployment" program includes a decision making process whereby postal facilities are relocated and altered. Testimony indicating the existence of two programs supports plaintiffs' position.[19] The District Judge in his May 14 memorandum of decision

---

14. There is no dispute that this program is nationwide.

15. For example, defendants point to the testimony of Edward V. Dorsey, Senior Assistant Postmaster General for Operations, who stated:
    "[T]here was a need for an intermediate level of management, between the region and the sectional center. So, the districts were organized to act as that kind of an administrative entity, not an operation entity, because the district doesn't operate anything. The district doesn't move any mail, other than mail somebody sends to it to answer. It doesn't do anything else. It's a policy, an administrative level kind of management."

16. A district manager, a mail processing representative, a customer service representative, a support representative, and an employee and labor relations representative (and sometimes one representative for field operations).

17. Francis A. Sutton, a Postal Service management employee who had been an assistant district manager (customer service representative), testified

Q. You have a lot to do with mail delivery?
A. The customer service, ADM [assistant district manager], has all to do with the delivery of mail.

18. The Postal Service makes no argument that RAP is not a "nationwide or substantially nationwide" program.

19. The Postal Service presented evidence that the two names are merely labels for what is in fact one program, but there is some evidence that there may be two programs. Edward V. Dorsey, Senior Assistant Postmaster General for Operations, stated:
    "Q. Do you know if the retail facilities program . . . is the same program as the postal facilities deployment program . . . ?
    A. I don't know that they are the same program. I would doubt that they are the same program. I would think one would be an adjunct of the other.
    The retail analysis program, and I say this on my own knowledge, would seem to me that any deployment program would be based on retail analysis of what you should deploy, and where you should deploy it.

stated that he was unable to determine whether one or two programs existed.

### C. The bulk mail system program

The District Judge found on the record available to him that the decision to implement the bulk mail system program was made before July 1, 1971, the effective date of the Postal Reorganization Act (i.e., § 3661), but he pointed out that "after a full record is developed the national bulk mail system could likewise be viewed as a change." Plaintiffs point to testimony [20] that indicates that implementation of the program was approved after the effective date of the Act.

■ Bearing in mind the factual disputes and uncertainties which we have described, the District Judge correctly denied summary judgment.[21]

### III. The preliminary injunction

■ The District Judge correctly stated the four factors to be considered prior to the award of a preliminary injunction:

(1) Is there a substantial likelihood that plaintiffs will prevail on the merits?

(2) Is there a substantial threat that plaintiffs will suffer irreparable injury if interlocutory injunctive relief is not granted?

\* \* \* \* \* \*
A. I would say the deployment program is the one that deploys the facilities. But, the retail analysis, based on . . . logic and deductions, that's a part of it."

20. Carl C. Ulsaker, the Regional Postmaster General for the Southern Region, testified:
"Q. Was the final decision on the bulk mail program made by Mr. Klassen?
A. Well, yes.
Q. This would have been the knowledge that you got from him in 1972?
A. Yes. Yes. It's my personal knowledge that Mr. Klassen made the decision to go with the bulk mail system.
Q. And that was in 1972, as well as you recall?
A. Right. And he was then the Postmaster General.

(3) Does the threatened injury to plaintiffs outweigh the threatened harm the injunction may do to defendants?

(4) Will the granting of a preliminary injunction disserve the public interest?

See Allison v. Froehlke, 470 F.2d 1123, 1126 (CA5, 1972); Wright and Miller, Federal Practice and Procedure, § 2948. Applying this formulation, the District Court granted preliminary injunctive relief with respect to the consolidation of district offices and RAP and denied such relief with respect to the national bulk mail system program.[22] The applicable standard of review is that the district court's grant or denial of preliminary injunctive relief will only be reviewed for an "abuse of discretion".[23] Bayless v. Martine, 430 F.2d 873 (CA5, 1970); United States v. Edwards, 333 F.2d 575 (CA5, 1964); 7 Moore's Federal Practice, ¶ 65.04[2], 65–47–49.

■ With respect to both RAP and the consolidation of districts, we think the District Court was correct in its determinations that plaintiffs had properly established that there was a substantial threat of irreparable injury to plaintiffs, that the threatened injury to plaintiffs outweighed the harm the injunction may inflict on the defendants, and that the grant of a preliminary injunction would serve the public interest. As to RAP,

21. If the District Judge determined summary judgment inappropriate with respect to any one or more programs, he was not required to grant partial summary judgment with respect to programs where there were no disputed issues of fact. *See* Powell v. Radkins, 506 F.2d 763, p. 765 [CA5, 1975]; 6 J. Moore, Federal Practice ¶ 56.15[6], at 2427.

22. Plaintiffs do not cross-appeal the denial of preliminary injunctive relief with respect to the national bulk mail system program. Consequently we review only the award of relief with respect to the first two programs.

23. We have concluded that there exist genuine issues as to material facts and that defendants' motion for summary judgment was properly denied. This does not, however, require a conclusion that there is a substantial likelihood that plaintiffs will prevail on the merits.

there was also sufficient showing of substantial likelihood that plaintiffs would prevail on the merits. With respect to the consolidation of districts, however, plaintiffs failed to carry their burden of demonstrating substantial likelihood of prevailing on the merits.[24] There was little evidence indicating that this program might have some effect on the nature of postal service.[25] By comparison, there was extensive testimony indicating that the consolidation and elimination of districts simply amounted to a reorganization of the management structure which would have no impact on the service available to users.[26]

The order of the District Court granting the preliminary injunction must be vacated insofar as it relates to the program to consolidate districts; in all other respects it must be affirmed.

Vacated in part, affirmed in part, and remanded for further proceedings.

---

**24.** The four factors considered prior to the award of preliminary injunctive relief are mixed questions of fact and law. On review the district court's findings of fact are to be upheld unless "clearly erroneous". F.R.Civ.P. 52(a). The district court's conclusions of law are subject to broad review and will be reversed if incorrect. *See* Wright and Miller, Federal Practice and Procedure § 2962, p. 636–37 (1973); Delaware & Hudson Ry. Co. v. United Transportation Union, 146 U.S.App. D.C. 142, 450 F.2d 603, 620, cert. denied, 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689

(1971). It is unclear whether the District Judge's determination of the likelihood of plaintiffs' success was based on a clearly erroneous factual determination of the impact on postal users of the program to consolidate districts or an incorrect interpretation of § 3661. Whichever the basis for the incorrect conclusion that plaintiffs would likely succeed on the merits, the preliminary injunction with respect to this program must be vacated.

**25.** See fn. 17, *supra.*

**26.** *See* e.g., fn. 15, *supra.*