Michael SHANE and Joseph
Dillon, Plaintiffs,

v.

Howard L. BUCK and United States
Postal Service, Defendants.

Civ. No. C–84–0780W.

United States District Court,
D. Utah, C.D.

June 28, 1985.

Martin Seymour Blaustein, Salt Lake City, Utah, for plaintiffs.

Peter Stirba, Asst. U.S. Atty., Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

Oral argument was heard on the parties' cross-motions for summary judgment on April 18, 1985. Martin Seymour Blaustein appeared on behalf of plaintiffs Shane and Dillon. Peter Stirba appeared on behalf of defendants Buck and the United States Postal Service ("Postal Service"). Both parties submitted memoranda which the court has considered carefully along with various authorities cited therein. Now being fully advised, the court renders the following decision and order.

This case raises four challenges to a Postal Service regulation contained in Section 153.212 of its Domestic Mail Manual (DMM), and to Postal Service Form 1583.

### I. *Background*

Plaintiff Michael Shane is the operator of a private mail-forwarding service known as the Postal Shoppe. Plaintiff Joseph Dillon is a user of Shane's mail-forwarding service. Customers, such as Dillon, inform their correspondents that their mailing address is that of the Postal Shoppe. The Postal Shoppe then receives the customers' mail from the Postal Service, and for a fee, forwards it to the customer by placing it unopened in a larger envelope, adding new postage and remailing it.

In August, 1984, defendant Buck informed plaintiff Shane that he was required to have Postal Service Form 1583 completed by all of the customers of his mail receiving agency. Shane was told that he must comply with the request by September 15, 1984 or the mail addressed to others than Shane at Shane's address would be returned to the sender. The plaintiffs refused to comply with the request and instituted this action.

Form 1583 is entitled "Application for Delivery of Mail Through Agent" and solicits the following information: the names and addresses of the applicant and the agent; the home address of the applicant; the name of the firm or corporation if the applicant is a firm or corporation; and if applicable, the business address of the firm or corporation, the type of business involved, the members or officers of the firm or corporation whose mail is authorized to be delivered to the agent, and the names and addresses of two references; the county, state, and date of the registration of a business or trade name of a corporate applicant; and the signatures of the agent and the applicant, which, in the case of a corporation, must be the signature of an officer of the corporation. Form 1583 also contains a "Privacy Act" notice, in accordance with 5 U.S.C. § 552a(e)(3)(A)–(D), that provides the statutory authority for the collection of the information requested,[1] the purpose for which the information is requested,[2] and the routine uses of the information.[3] It also states that completion of the form is voluntary but if the information is not provided the mail will be withheld from delivery to the agent and delivered to the addressee, or, if the address of the addressee is that of the agent, returned to the sender.

Form 1583 was developed pursuant to DMM § 153.212,[4] which provides:

[w]hen mail is to be delivered to a commercial mail receiving agency, Form 1583, *Application for Delivery of Mail through Agent*, must be signed by both the commercial agent and the addressee. The commercial agent or a notary public must witness the signature of the addressee. The addressee is required to furnish 2 items of identification, the particulars of which must be included on

---

1. 39 U.S.C. §§ 403, 404.

2. The form states that "it serves as written authority for the delivery of mail other than as addressed."

3. As a routine use, the information contained on the form may be disclosed to "an appropriate law enforcement agency for investigative or prosecution proceedings, to a congressional office at [the] request [of the applicant], to a labor

organization as required by the NLRA, and where pertinent, in a legal proceeding to which the Postal Service is a party."

4. DMM § 153.212 and all of the DMM is incorporated by reference in the Federal Register, and is thereby deemed to be published therein. *See,* 39 C.F.R. § 111.1(1984) and 5 U.S.C. § 552a (1977).

Form 1583. The original of the completed Form 1583 must be filed with the postmaster and a duplicate copy of the completed Form 1583 must be kept on file by the commercial agency. The original copy of Form 1583 is filed without verifying the addresses shown thereon and without obtaining statements from the references given, unless the postmaster is specifically requested to do so by the inspector in charge, or when there is a reason to believe the mail will be, or is being, used for unlawful purposes. In consideration of delivery of the mail to the commercial agent, the addressee and the agent are considered to agree that:

a. No change of address order will be filed with the post office when the agency relationship is terminated;

b. The forwarding of mail intended for the addressee is the responsibility of the agent; and

c. When remailed by the commercial agent, the mail is subject to payment of new postage since delivery is deemed to have been made when the mail was delivered to the commercial agent.

Plaintiffs challenge the legality of DMM § 153.212 and Form 1583 on four bases: (1) the regulation was not promulgated in accordance with the Administrative Procedure Act; (2) Form 1583 does not have a control number in violation of the Paperwork Reduction Act; (3) the regulation and form violate plaintiffs' first amendment rights of free speech, association, and privacy and (4) the regulation and form violate plaintiffs' fifth amendment due process rights.

## II. *Discussion*

### A. *The Applicability of the Administrative Procedure Act to DMM 153.212*

Section 553 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, outlines the procedures that an agency must follow when promulgating rules or regulations. That section provides for notice to be published in the Federal Register and for public participation in the process before the rule is finally adopted. Sections 556 and 557 detail the requirements for hearings and the appeal process. Plaintiffs contend that the Postal Service was subject to the requirements of Section 553 of the APA when it adopted DMM 153.212 but failed to follow them. Because the regulation was not promulgated according to the statutory requirements, the plaintiffs argue that DMM 153.212 is invalid.

Under 39 U.S.C. § 410(a), the Postal Service is generally exempted from chapters 5 and 7 of Title 5.[5] *Nat. Easter Seal Soc. v. U.S. Postal Service*, 656 F.2d 754, 766 (D.C.Cir.1981). The plaintiffs concede that this section would seem to relieve the Postal Service from the rule making procedural requirements of the APA. But the plaintiffs note that various proceedings involving the Postal Service are made subject to the provisions of chapters 5 and 7 of the APA by specific statutory language.[6]

Plaintiffs rely on one such section, 39 U.S.C. § 3661, for their contention that the regulation at issue is invalid. Section 3661 provides that "when the Postal Service determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," the Service shall submit a proposal to the Postal Rate Commission requesting an advisory opinion on the change. The Commission, in turn, is required under 39 U.S.C. § 3661(c) to hold a hearing on the record in accord with the requirements of sections 556 and 557 of Title 5 of the APA.

In order for those requirements of the APA to be applicable to DMM 153.212 un-

---

**5.** 39 U.S.C. § 410(a) states:

Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall

apply to the exercise of the powers of the Postal Service.

**6.** *See, e.g.* 39 U.S.C. § 3001(f) (mailability of matter), 39 U.S.C. § 3628 (appellate review of decisions of the Postal Services governors concerning a recommended decision of the Postal Rate Commission).

der the provisions of 39 U.S.C. § 3661, there must be a showing that the proposed regulation represents: (1) a change (2) in the nature of postal services (3) which affects the service on a nationwide or substantially nationwide basis. In other words, there must be "some meaningful impact on service" which affects a broad geographical area and which represents more than a minor alteration in procedures or service having only a minimal effect on the general class of postal users. *See Buchanan v. United States Postal Service*, 508 F.2d 259, 262–263 (5th Cir.1975).

This interpretation of section 3661 is informed not only by the language of the statute itself but also by an examination of the relevant legislative history. The United States Post Office was reorganized and renamed in 1971 when the Postal Reorganization Act, P.L. 91–375 (1970) came into effect. Congress believed that fundamental changes in the organization of the Postal Service were needed in order for it to become self-sustaining, to be managed more professionally, and to attain improved employee morale. H.R. No. 91–1104 *reprinted in* 1970 U.S. Cong. & Ad. News 3649, 3653. The Post Office Department was accordingly taken out of the Cabinet to free it from political influence and was recast in the form of an independent establishment within the executive branch of government. *Id.* at 3654. The new Postal Service was to be run in a businesslike way so as to provide an efficient and economical postal service and at the same time, serve as nearly as practicable the entire population of the United States. As others have pointed out, these two basic policies underlying the Postal Reorganization Act pull in different directions. The Postal Service is to be freed from external constraints on its day to day decision making and yet is also to be responsible and sensitive to the public

whom it is to serve. *Buchanan,* 508 F.2d at 262.

The language of section 3661 is susceptible to these same tensions. If every decision the Postal Service makes is considered a "change" requiring public input, the Postal Service would find it impossible to function in much the same way as did Gulliver, immobilized by the multitude of Lilliputian "threads." On the other hand, major changes in postal services should not be contemplated without public participation in the decision-making process. Obviously, a balance must be struck which allows the Postal Service to manage its affairs freely and yet which keeps it responsible and accountable to the American public. In order for the requirements of Title 5 to come into play under section 3661, therefore, there must be a change of sufficient magnitude to impact the general public's postal services. *See Buchanan* 508 F.2d 259; *NAACP v. U.S. Postal Service,* 398 F.Supp. 562 (N.D.Ga.1975).

■ With the above guidelines in mind, the court turns to the question of whether the promulgation of DMM § 153.212 constitutes such a "change" as to bring it within the requirements of section 3661. Plaintiffs state that the rules and regulations of DMM § 153.212 have a nationwide effect as the completion of Form 1583 is a conditioned requirement for all mail-receiving agencies. Moreover, the change is not a minor one, according to plaintiffs, as failure to complete the form results in mail not being delivered to the receiving agencies and thus ultimately, to the users of the agencies. Plaintiffs also contend that the purported change occurred in 1982; prior to that time they did not have to fill out Form 1583.

Defendants, however, point out that DMM § 153.212 is not a recent "change" at all. The regulation has contained the same substantive provisions since at least 1960.[7]

7. In 1960, the Post Office department gave notice of an amendment to 39 C.F.R. § 44.2(a) at 25 Fed.Reg. 9047, 9049. That text provided:
   (a) *Delivery to addressee's agent.* (1) Unless otherwise directed, an addressee's mail may be delivered to his employee or a member of his family. A person or a number of persons

may designate another to receive their mail. Designation of another person to receive mail should be in writing, but no special form is furnished or required. (2) When mail is to be delivered to a mail receiving agency, an application on Form 1583 "Application for Delivery of Mail Through Agent", must be signed

Section 5 of the Postal Reorganization Act of 1970, Pub.L. 91–375 (1970) provides that all regulations of the former Post Office Department continue in effect until modified or repealed. Accordingly, the present DMM § 153.212 can be traced backwards in a continuous line to 1960. The most recent amendment to DMM § 153.212 appears to have occurred in 1982. *See,* 47 Fed.Reg. 43951 (October 5, 1982). The regulation was revised "to allow either a commercial agent or a notary public to witness the addresse(e)'s signature on Form 1583." That change is hardly the type of "change" Congress had in mind when enacting section 3661. Moreover, the court cannot find that any "change" has occurred in the recent past which would necessitate the hearing procedures required by section 3661. Furthermore, even if a "change" has occurred which results in DMM § 153.212 being enforced in a more rigorous fashion than previously, that change is not the kind that has a meaningful impact on nationwide service within the meaning of Section 3661.[8] The court holds, therefore, that neither the APA nor the provisions of Title 5 provided for under 39 U.S.C. § 3661 are applicable to the Postal Service's promulgation of DMM § 153.212.

B. *The Applicability of the Paperwork Reduction Act, 44 U.S.C. §§ 3501 to 3520 to the Postal Service*

The Paperwork Reduction Act (hereinafter referred to as "PRA"), Pub.L. 96–511, 44 U.S.C. §§ 3501–3520, was enacted in 1980. Among its purposes are: (1) the minimization of the Federal paperwork burden for individuals, small businesses, state and local governments, and other persons;

by the agent and the addressee, and the form must be filed with the postmaster. A duplicate copy of completed Form 1583 must be kept on file by the agency. Arrangements for disposition of mail must be made with the agency by the addressee. When forwarded by the agency, the mail is subject to payment of new postage.

8. Plaintiffs have referred indirectly to a "change" in Postal Service policy or a regulation that occurred in 1983 which resulted in the Service's decision to return the mail to the sender if Form 1583 was not completed.

(2) the minimization of the cost to the Federal government of collecting, maintaining, using, and disseminating information; and (3) the coordination and integration of Federal information policies and practices. To that end, the Office of Management and Budget (hereinafter referred to as "OMB") renews and approves information collection requests proposed by agencies. If a request is approved, an OMB control number must be placed on the form that will be filled out by the individual or business. If an OMB number is not on the form, the form is considered a "bootleg" form and the public can ignore the information requests. 44 U.S.C. § 3512.

Plaintiffs contend that they are not obligated to fill out Form 1583 as the Postal Service is subject to the PRA and the form lacks a control number. Defendants argue that the Postal Service is not subject to the requirements of the PRA. The court must decide, therefore, this question of apparent first impression: Is the Postal Service subject to the requirements of the Paperwork Reduction Act, 44 U.S.C.A. § 3501–3520?

Section 3507 of the PRA, 44 U.S.C. § 3507, provides that "an agency shall not conduct or sponsor the collection of information unless, in advance of the ... request for information," the agency has had the request approved by the Director of the Office of Information and Regulatory Affairs within the OMB. That approval, as noted above, is manifested by "a control number to be displayed upon the information collection request." § 3507(f). Form 1583 appears to fall within the definition of "collection of information." [9]

9. The term "collection of information" is defined in § 3502(4). That section states:
  the term "collection of information" means the obtaining or soliciting of facts or opinions by an agency through the use of written report forms, application forms, schedules, questionnaires, report or recordkeeping requirements, or other similar methods calling for either—
  (A) answers to identical questions posed to or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities or employees of the United States; or

The determinative issue for the court to address is whether the Postal Service is an "agency" as referred to in Section 3507 and thereby subject to the PRA. "Agency" is defined in Section 3502(1) of the PRA. That definition states:

(1) the term "agency" means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency, but does not include the General Accounting Office, federal Election Commission, the governments of the District of Columbia and the territories and possessions of the United States, and their various subdivisions, or Government-owned contractor-operated facilities including laboratories engaged in national defense research and production activities;

The term "independent regulatory agency" contained within the above definition is also defined in § 3502(10). It states:

(10) the term "independent regulatory agency" means the Board of Governors of the Federal Reserve System, the Commodity Futures Trading Commission, the Consumer Product Safety Commission, the Federal Communications Commission, the Federal Deposit Insurance Corporation, the Federal Energy Regulatory Commission, the Federal Home Loan Bank Board, the Federal Maritime Commission, the Federal Trade Commission, the Interstate Commerce Commission, the Mine Enforcement Safety and Health Review Commission, the National Labor Relations Board, the Nuclear Regulatory Commission, the Occupational Safety and Health Review Commission, the Postal Rate Commission, the Securities and Exchange Commission, and any other similar agency designated by statute as a Federal independent regulatory agency or commission.

Although the Postal Rate Commission is listed as an independent regulatory agency

within the above definition, the Postal Service is not. A fundamental rule of statutory construction states that if a statute lists persons or things in an exhaustive fashion, then the court can assume that Congress intended to exclude a particular person or thing not included in the list. Because the Postal Rate Commission was included in the definition, but not the Postal Service, one can conclude that Congress considered the Service and intentionally excluded it. Plaintiff argues, however, that both the Postal Rate Commission and the Postal Service are defined statutorily as "independent establishments within the executive branch." *See* 39 U.S.C. § 201, 39 U.S.C. § 3601(a). In addition, the plaintiff points out that Congress intended that the Commission and Service work together as partners to achieve an effective postal service. *See* S.Rep. No. 91–912. Accordingly, the Postal Service should be considered to fall within the phrase "any similar agency designated by statute as a federal independent regulatory agency or commission." 44 U.S.C. § 3502(10).

The court disagrees with that interpretation. If the Postal Service is to come within the meaning of an "agency" for purposes of the PRA, it must do so within the broader definition of an "agency" contained within section 3502(1), not within section 3502(10)'s definition of an independent regulatory agency. That conclusion rests on several bases. First, as mentioned above, the absence of the Postal Service from the lengthy list of independent regulatory agencies under subsection 10 indicates an intention to exclude it. Second, despite their definitional similarities, the Postal Rate Commission and the Postal Service have significant functional differences. The Rate Commission is generally charged with the duty of making recommendations to the Postal Service regarding rates, fees and classification matters. 39 U.S.C. §§ 3601, 3622 and 3624. These are matters of a "regulatory" character. The Postal Service, on the other hand, has as its basic function "the obligation to provide postal services to bind the Nation together

(B) answers to questions posed to agencies, instrumentalities or employees of the United

States which are to be used for general statistical purposes.

through the personal, educational, literary, and business correspondence of the people." 39 U.S.C. § 101. The Postal Service is primarily concerned with the delivery of services, not with regulation. Finally, a Senate hearing on the PRA suggests that the drafters had listed all the then existing independent regulatory agencies within the definition of section 3502(10). The general phrase "any similar agency designated by statute as a Federal independent regulatory agency or commission" was added so that new regulatory agencies would be subject to the PRA when they were created by Congress. *Paperwork and Redtape Reduction Act of 1979: Hearing before the Subcommittee on Federal Spending Practices and Open Government of the Committee on Governmental Affairs,* U.S. Senate, 96th Cong. 1st Session on S. 1411, November 1979. (hereinafter referred to as "Senate Hearing".)

The inquiry thus turns to whether the Postal Service fits within the meaning of "agency" as defined in 44 U.S.C. § 3502(1) of the PRA. The phrase "other establishment in the executive branch of the government" could conceivably include the Postal Service as it is defined as "an independent establishment of the executive branch." 39 U.S.C. § 201. The defendants assert, however, that the Postal Service does not fall within the scope of section 3502(1)'s definition. They contend that by definition the Postal Service is an *independent* establishment of the executive branch. (emphasis added). They further state that the fact that the Postal Service, as an "independent establishment" is not to be regarded in the same light as other executive branch "establishments" or "Executive agencies" is demonstrated by 5 U.S.C. §§ 104, 105. Under 5 U.S.C. § 104, the Postal Service, as well as the Postal Rate Commission, is specifically excluded from the definition of "independent establishment" for purposes of Title 5 of the United States Code. This analogy to Title 5 may not be altogether persuasive for interpreting the PRA. Nonetheless, it indicates that Congress has considered the Postal Service to be in a unique category in the Executive branch.

An examination of other provisions of Title 39 provide only ambiguous conclusions about the applicability of the PRA to the Postal Service. For example, section 410 of Title 39 is a general exempting provision which exempts the Postal Service from any "Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets or funds." By its terms, it does not necessarily exempt the Postal Service from the P.R.A.

Similarly, 39 U.S.C. § 401(4) grants the Postal Service the power "to determine and keeps its own system of accounts and the forms and contents of its contracts and other business documents." That section suggests that Congress intended that the Postal Service be empowered to take care of its own paperwork problems. But 44 U.S.C. § 3518 of the PRA enacted subsequent to 39 U.S.C. § 401(4), states clearly, "except as otherwise provided in this chapter, the authority of an agency under any other law to prescribe policies, rules, regulations, and procedures for Federal information activities is subject to the authority conferred on the Director by this chapter." Nothing else in the chapter excludes the Postal Service, and so one could conclude the Postal Service is not exempt.

When the statutory language is unclear, a study of the legislative history and Congressional intent is required. As was noted above, the Postal Reorganization Act was enacted in 1970 with the goal of reorganizing the structure and internal operations of· the Postal Service. Congress clearly intended that the Postal Service was to be freed from pressures from the executive branch and was to be run as a business with minimal Congressional involvement.

The Paperwork Reduction Act, P.L. 96–511, was enacted in 1980, ten years after the Postal Service was reorganized. Its enactment was the culmination of intense and thorough studies and hearings regarding the cost to the nation, financially and psychologically, of the increasing numbers of forms and paperwork required by federal agencies. In 1977, the Commission established by Congress to study the matter

submitted its final report to Congress. Both the Senate and House held oversight hearings on the Paperwork Commission's recommendations and, in response, enacted the PRA in 1980.

A review of the oversight hearings and the Commission's report reveal Congress' commitment to a significant reduction in the amount of paperwork generated by federal agencies. *Senate Hearing, supra; A Report of the Commission on Federal Paperwork: Final Summary, Oct. 3, 1977.* To that end, Congress eliminated previous exemptions from paperwork clearance laws for various federal agencies. The paperwork reviewing functions previously split between the Office of Management and Budget (hereinafter referred to as "OMB"), the Government Accounting Office, the Department of Commerce and Health, Education and Welfare were consolidated in the office of the OMB. *Senate Hearing* p. 7.

Although it is clear that Congress intended generally that the PRA apply to all Federal "agencies" (with limited exceptions), there are other indications of Congressional intent to exclude the Postal Service. The Commission's report entitled, *A Report of the Commission on Federal Paperwork: Final Summary, Oct. 3, 1977,* summarizes the Commission's findings. The Commission investigated and reported separately on the paperwork generated by a variety of Federal programs including tax, welfare, housing, education, occupational safety and health. The Commission also reported on 13 governmental processes such as rulemaking and information resources management that generate paperwork and cut across program agency lines. None of these 36 reports mentions the Postal Service in any way despite the reports' thorough coverage of major Federal agencies. Had Congress intended to include the Postal Service within the forthcoming PRA, it certainly would not have excluded it from its reports and recommendations.

The nature of the reorganized Postal Service also supports a finding that it is not subject to the PRA. Congress overhauled the old post office department in order to achieve a more economically viable and self-sufficient new Postal Service. Unlike other Federal agencies, the Postal Service is to become increasingly less dependent on governmental financial support. The Postal Reorganization Act of 1970 freed the Service from a variety of procedures required by other agencies. In order to achieve economic self-sufficiency, the Postal Service must strive to achieve profitability in much the same way as any business must. Any tendency to generate paperwork that might be "inherent" in a bureaucracy should be checked by the Postal Service's internal economic concerns.

The concerns of Congress as revealed in the legislative history of the Postal Reorganization Act suggest that the Postal Service was to be freed from many of the procedural practices required of Federal agencies. The Service was set up in the form of a quasi-independent business. Nothing in the subsequent enactment and legislative history of the Paperwork Reduction Act reveals Congressional intent to include the Postal Service within its scope. Accordingly, the court holds that the Postal Service is not subject to the requirements of the Paperwork Reduction Act, 44 U.S.C. §§ 3501 to 3520.

## C. *First Amendment Claims*

Plaintiffs allege that DMM § 153.212 and Form 1583 violate their first amendment rights of free speech, privacy, and freedom of association. Specifically, they contend that conditioning the receipt of mail on the affirmative act of completing a form impermissibly burdens their speech as well as constitutes a prior restraint. In addition, by demanding that plaintiffs reveal their identification on Form 1583, plaintiffs contend that the Postal Service has chilled their first amendment rights.

The Postal Service does not dispute that the government may not restrict speech "because of its message, its ideas, its subject matter, or its content." *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). Rather it argues that DMM § 153.-212 and Form 1583 regulate mail delivery,

not speech. The Postal Service also offers a variety of justifications for the regulation and contends that the restrictions on speech, if any, are reasonable time, place, and manner ones.

Even if speech itself is not the target of a restriction, the indirect effect of burdening speech may still result in the restriction being unconstitutional. If speech occurs in a public forum, the state can place reasonable time, place, or manner restrictions on it but must do so without regard for content. Those restrictions must also be narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *U.S. v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

The mails have played a crucial role in communication in this country from its earliest days. *See U.S. Postal Service v. Greenburgh Civic Assns.*, 453 U.S. 114, 121, 101 S.Ct. 2676, 2681, 69 L.Ed.2d 517 (1981). They continue to provide the means for a rich exchange of communication. The Postal Service is a "massive, government-operated communications facility open to all forms of written expression protected by the First Amendment", *Greenburgh*, 453 U.S. at 141, 101 S.Ct. at 2691, (White, J. concurring) and, as such, is a public forum. *Cf. Greenburgh* (letter box not a public forum). Any restrictions, on speech, therefore, must be ones that are of a reasonable time, place, and manner character. The restrictions must be content neutral, applied to all mailable matter regardless of its nature, and must serve an important governmental interest.

In the present case, the requirement that a user of a commercial mail receiving agency supply the Postal Service with its name and address before it can receive mail, may place some burden on the user's receipt of mail and hence on his freedom of speech.[10] The government contends, however, that the regulations serve several important functions. First, the regulations notify all the parties involved of the agency relationship between the mail-receiving business and the client. Second, accurate mail delivery is encouraged. The Postal Service can determine to whom mail should be delivered in situations where corporations using the commercial agency are dissolved or the agency itself closes down. Third, by requiring that certain information be disclosed, illegal use of the mails is discouraged. The information assists the government in its investigations of criminal uses of the mail.

■ Any burden that is imposed on a user of a mail receiving agency because of DMM § 153.212 is a minimal one and is imposed regardless of the nature of the mail received. The restrictions are reasonable in light of the government's needs to ensure that mail is delivered to the proper addressee and that the mails are not being used for illegal purposes. The Postal Service is not attempting to limit a particular form of speech nor to cure supposed "harms" caused by protected speech. If it was, the regulations would be susceptible to a first amendment challenge. Indeed that was the case in *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). In *Lamont*, mail matter that was considered "communist political propaganda" was detained by the post office pursuant to statute and was delivered only upon the addressee's request. The Supreme Court concluded that the statute as construed and applied was unconstitutional because it required "an official act (viz. returning the reply card) as a limitation on the unfettered exercise of addressee's First Amendment rights." *Lamont*, 381 U.S. at 305, 85 S.Ct. at 1495.

Plaintiff urges this court to rely on *Lamont* to find that the act of filling out an address form here is also an affirmative act that is unconstitutional. But the statute at issue in *Lamont* was not content neutral. It sought to detain only certain

---

10. Although unchallenged by defendants, the court questions plaintiff Shane's standing on this issue. The court can not see how Shane's freedom of speech has been abridged in any way. Plaintiff Dillon, as the recipient of mail, has a tangible freedom of speech interest at stake here insofar as the freedom to speak would be meaningless without a correlative freedom to receive the message.

kinds of materials that might be considered "communist propaganda." In contrast, the regulation here is aimed at all who use commercial mail-receiving agencies for whatever purpose and survives constitutional challenge as a reasonable time, place, or manner restriction. The restrictions serve significant government interests and do not foreclose channels of communication. *See U.S. v. Grace,* 461 U.S. at 177, 103 S.Ct. at 1706; *Perry Educational Assn. v. Perry Local Educ. Assn.,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); *U.S. Postal Service v. Greenbugh Civic Assns,* 453 U.S. at 132, 101 S.Ct. at 2686; *Heffron v. Intl. Soc. for Krishna Consciousness,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981); *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 535, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). Plaintiffs may choose to receive mail in a post office box or mail box or through the mail receiving agency and are not restricted at all in their ability to send mail.

The court therefore concludes that DMM § 153.212 and its accompanying form, Form 1583, do not unconstitutionally abridge free speech. Nor does the court find any merit in the plaintiffs' challenge to the regulations based on the theory of prior restraint. Finally, plaintiffs' contention that their freedom of speech is somehow chilled by the necessity of completing Form 1583 is too speculative and subjective to be considered at this time. *See Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972).

■ Plaintiffs also contend that DMM § 153.212 and Form 1583 violates their rights of privacy [11] and freedom of association. The Supreme Court has not yet squarely confronted the issue of whether the right to privacy limits governmental powers relating to the collection of data concerning private individuals. *See Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The propriety of

government collection of data has been considered in terms of the fourth and fifth amendment; *see e.g., United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), but none of the protections provided by those amendments is at issue here. Nonetheless, cases such as *Whalen* suggest that while government collection of data can threaten individual privacy, collection may take place in circumstances where unwarranted disclosure of the information to others is avoided and important governmental interests are involved.

Supplying one's name and address to the Postal Service is not a disclosure of personal matters of the magnitude likely to establish a constitutional deprivation. Moreover, the government's legitimate interests here outweigh any minimal intrusion upon plaintiffs' privacy. *See Whalen v. Roe,* 429 U.S. at 591, 597–98, 97 S.Ct. 872, 875–76; *Duplantier v. United States,* 606 F.2d 654, 670 (5th Cir.1979), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981). In addition, adequate safeguards exist to control the dissemination of the information contained on Form 1583 through the regulations of the Privacy Act, 5 U.S.C. § 552a(b). *See also* 39 C.F.R. § 266.4 (1984).

The requirement to fill out Form 1583 in accordance with DMM § 153.212 neither implicates nor violates plaintiffs' freedom to associate. It does not interfere with any intimate human relationships nor with any association of individuals engaged in protected First Amendment Rights. *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

The court finds no constitutional violations of the rights of privacy or freedom to associate occur from the requirements of DMM § 153.212 or Form 1583.

### D. *Due Process*

■ Because the user's mail is detained if form 1583 is not completed, plaintiff argues that his right to use the mails will be

---

**11.** Based on the allegations in the complaint, plaintiffs have not demonstrated that they have suffered any identifiable harm from the Postal Service's regulations. Accordingly, it is doubtful that the plaintiffs have standing to raise this issue. *See Laird v. Tatum,* 408 U.S. at 13, 92 S.Ct. at 2325.

deprived him without due process of law. The court finds no merit in this contention. The requirements at issue here do not result in the impounding of mail in a summary fashion, *see, e.g., Williams v. Blount,* 314 F.Supp. 1356 (D.D.C.1970), nor are they significantly different from other affirmative acts that must occur before mail is received such as providing a mail box or restraining pets. The plaintiffs' access to the mails is simply not impaired by the requirements in a manner that invokes procedural due process protection.

### III. *Summary*

In summary, the court holds that the enactment of DMM § 153.212 does not represent "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis" within the meaning of 39 U.S.C. § 3661(c). No hearings on the regulation are required by the Administrative Procedure Act itself or under 39 U.S.C. § 3661(c). The Paperwork Reduction Act, 44 U.S.C. §§ 3501–3520, does not apply to the Postal Service and therefore the lack of an OMB control number on Form 1583 does not result in its invalidity. Finally, DMM § 153.212 and Postal Service Form 1583 do not violate plaintiffs' constitutional rights of free speech, privacy and due process.

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted. Defendants shall prepare an order and final judgment within twenty days in accordance with this opinion.