**Allan LEE, Martha Clark, and Glenda Dent, Plaintiffs,**

v.

**Rosemarie SMITH, City Clerk of Beaumont, Texas, in her Official Capacity, and the City of Beaumont, Texas, Defendants.**

**No. 1:96–CV–0173.**

United States District Court, E.D. Texas, Beaumont Division.

April 16, 1996.

Edward Jack Lawrence, III, Beaumont, TX, Hugh Lowe, Osborne Lowe Helman & Smith, L.L.P., Austin, TX, for plaintiffs.

Vander Lane Nichols, Beaumont, TX, for defendants.

### MEMORANDUM OPINION

COBB, District Judge.

The Plaintiffs, Allan Lee, Martha Clark, and Glenda Dent, filed this action seeking to enjoin the City of Beaumont, and Rosemarie Smith, the City Clerk, from holding its election for city officers presently set for May 4, 1996, unless the ballot includes a referendum calling for a Citizens' Police Review Board.

The City Charter of Beaumont has provisions by which a referendum (initiative) can be placed on a ballot if the required number of citizens sign valid petitions within sixty (60) days after a Notice of Intention to Circulate a Petition is filed with the City Clerk. Beaumont City Charter Art. XI, Section 2 (Charter).

On August 9, 1995, Plaintiff Lee filed a Notice of Intention, and he and others circulated petitions and filed them sixty-one days later, the 60th day falling on a Sunday. The Clerk received them on a Monday, and told the Plaintiff she would not certify them to the Mayor and City Council because the petitions were not timely returned and did not have the requisite number of valid signatures. Thus, the so-called first petition was never actually filed with the City Clerk.

The Plaintiff Lee apparently acquiesced in the Clerk's decision, but doggedly pursued his effort to obtain the required number of

signatures of registered voters in Beaumont, and commenced a second petition drive on Monday, October 9, 1995, the day he attempted to submit the first petition. Lee returned the second petition on December 8, 1995, and the city accepted the petition as being timely filed.

On December 13, 1995, the Clerk notified Lee that the petition was insufficient as it was lacking some or all of the following:

1) a voter registration certificate number for each signature

2) a voting precinct number for each signature

3) the name, on each page of the petition, of the person circulating the petition

4) the addresses of some of the signers

5) the sworn statement containing the circulator's name, address, voting precinct number, and voter registration number on each page he circulated.

In addition, the Clerk noted that the submitted petition was a photocopy and she requested that the original petition be submitted. (Defendant's Exhibit D, Clerk's Letter to Mr. Lee, dated December 13, 1995). Accordingly, the petition was found to be insufficient and was returned to the Plaintiff.

The Plaintiff retrieved the petition from the City Clerk on December 28, 1995. The ten day period for refiling the amended petition fell on Sunday, January 7, 1996. Plaintiff Lee filed the amended petition on Monday, January 8, 1996. The City Clerk assumed custody of the petition for review purposes. The Clerk's office completed its review of the petition on Wednesday, January 17, 1996 (at approximately 4:30 p.m.). By letter dated January 22, 1996, the City Clerk notified the Beaumont City Council and Plaintiff Lee of the second amended petition's insufficiency. The Clerk noted the petition. had been filed on the eleventh (11th) day after Mr. Lee retrieved the petition from the Clerk. Further, the Clerk reported her tabulation of the number of valid signatures contained in the petition as 2,485.

To be valid, the petition must contain 3,395 signatures—this is a 910 signature deficit.

The Plaintiffs contend the City and its Clerk have violated the laws (42 U.S.C. § 1983) and Constitution of the United States (Amendments 1 and 14), citing an unconstitutional denial of ballot access.

## Standards for Preliminary Injunction

In an effort to ensure the placement of the petitioned referendum on the May 4, 1996 ballot, the Plaintiffs seek a preliminary injunction. The purposes of a preliminary injunction are to preserve the status quo and to prevent irreparable injury pending final disposition of the case. Four factors are considered in awarding such relief:

1) Is there a substantial likelihood that the plaintiff will prevail on the merits?

2) Is there a substantial threat that plaintiffs will suffer irreparable injury if the injunctive relief is not granted?

3) Does the threatened injury to the plaintiffs outweigh the threatened harm the injunction may do to the defendants?

4) Will the granting of a preliminary injunction disserve the public interest?

*Buchanan v. United States Postal Service*, 508 F.2d 259, 266 (5th Cir.1975). For the reasons discussed more fully herein, the Court finds that a preliminary injunction is not justified in this case.

## ANALYSIS

The City of Beaumont, Texas is a home-rule city created pursuant to Article XI, § 5 of the Texas Constitution. The City Charter was originally adopted on December 6, 1947. The last amendments to the charter were adopted on April 5, 1986. Among the amendments adopted at that time were changes to the charter provisions governing initiative, referendum, and recall[1]. The Plaintiffs assert in their complaint that these provisions of the City Charter do not apply as they are in conflict with state law and are therefore preempted. In their arguments to

---

1. In their present form, the charter provisions governing signature validation and verification require that the petition include "in addition to the signature, each signer's printed name, residence address, voting precinct number, and voter registration number...." (Charter of the City of Beaumont, Texas, Article XI, Section 2, Subsection 3(a)).

this Court, the Plaintiffs highlight two sources of conflict. First, Plaintiffs aver that the signature validation and verification provisions contained in Texas Election Code [2], Section 277 et seq. preempt the City Charter's provisions. Second, Plaintiffs contend that Section 1.006 of the same code governs the submission of materials on a weekend or holiday and to the extent the charter does not allow more than sixty days, the state statute is controlling and would allow for submission on Monday. It is not necessary for the Court to make a ruling on either of these purported conflicts since the Plaintiffs have failed to carry their burden under either the state or the city election criteria. Because the Clerk tabulated the signatures and found there to be too few to make the petition valid, the timeliness submission question need not be further addressed.

 The Plaintiffs have failed to demonstrate the substantial likelihood that they would prevail on the merits of their claim. First, if the Plaintiffs seek strict adherence to letter of the law, as they seem to argue, then substantially all of the petition signatures provided by Mr. Lee would be invalidated as they lack a voter registration number. This is a requirement of both the state statute and the City Charter and could be considered central to the signature validation process. However, "Texas courts have not always required strict compliance with the Election Code's mandates regarding what will or will not invalidate voter petition signatures." *Reese v. Commissioners' Court of Cherokee County, Texas*, 861 S.W.2d 281, 283 (Tx.App.—Tyler 1993, no writ). The main factor considered in assessing how much deviation from the Code is permissible is to what extent the deviation will impair the ability to verify the eligibility of the signer. *Id.*

In the case at bar, approximately 3,909 purported signatures were submitted and tabulated by the City Clerk. 121 were duplicates. 280 could neither be validated nor invalidated while 1,023 were invalidated by the Clerk, leaving 2,485 valid signatures. The City Clerk testified at length about the painstaking measures she implemented to tabulate the petition signatures. She and her staff supplied voter registration numbers, addresses, and full names where there were none. A criss-cross directory was used to supply additional information. Short of going door-to-door, the Clerk used all methods available to her. The Clerk testified that the validation process used for this petition was substantially more intensive than the signature validation process required for other petitions. In addition, the Clerk told Plaintiff Lee where she would be on Saturday and Sunday, and she gave him the appropriate telephone numbers. She also told Lee that if she could not be reached to leave a message on her answering machine, either at her home or office. On Sunday afternoon and Sunday night she checked both machines and there were no messages from the Plaintiffs or from anyone acting on their behalf. The Clerk testified she would have made arrangements to receive the amended petition on either Saturday or Sunday if required. In short, the Clerk exercised extreme care and precision in validating the petition signatures, resolved every possible inference in favor of the petitioners, and generally went beyond the call of her duties.

Those who aided the Clerk in her duties worked long and hard in reviewing the petitions. Each person was instructed in the proper procedures, and insofar as the Clerk knew, each person followed these procedures. For the petition to be valid, she and her deputies would have had to make approximately 910 mistakes in the validation process. The Clerk testified that this was beyond the realm of possibility, in her opinion. During her testimony, the Clerk demonstrated complete competence in understanding and implementing the requirements of her job. She was open, candid, and honest in her answers to questions by both counsel for the Plaintiffs and for the Defendants.

---

2. The signature validation requirement in the Texas Election Code require that the petition include in addition to the signature a) the signer's printed name, b) the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration, c) the signer's residence address, and d) the date of signing. Texas Elec.Code Ann. § 277.002(a)(1) (Vernon 1988 and Supp.1995).

The Plaintiffs did not present any witness who challenged the validation process. The Plaintiffs relied on cross-examination (certainly a permissible tactic) to make their case. The City Clerk was able to answer as to why certain individuals had been eliminated as invalid signers. In fact, a even a cursory review of the petition pages submitted to the Court reveals there are a substantial number of invalid names on the petition. The petition includes the signatures of individuals from neighboring cities and such incomplete information that verification of the individual was not possible. The Plaintiffs have not created an inference, even a statistical one, that 910 signatures are indeed valid. Further, there is evidence that signatures from the first petition were included in the second petition. This would have the effect of reducing the number of signatures found to be valid, although there is no estimate by how much. The challenge mounted to the validation procedures totals little more than conjecture and is a far cry from the level of proof necessary for the issuance of a preliminary injunction to halt the May 1996 city elections.

Moreover, there appear from the record to be no risk of irreparable injury to the Plaintiffs. Plaintiff Lee testified that this was an important issue to the community and that postponing the election or scheduling a special election would not cause irreparable harm. In fact, Plaintiff Lee stated, in no uncertain terms, that the Plaintiffs are committed to a continued and dogged pursuit of this issue in the future. As Plaintiffs readily admit, the incidents which sparked the initial petition continue to concern a substantial segment of the community and, according to the Plaintiffs, the drive for a police civilian review board will continue. The Plaintiffs have failed to demonstrate irreparable harm if an injunction is not issued.

### Conclusion

While the rights to initiative and referendum must be accorded great deference in our democratic society, they are not without their limits. It is necessary to ensure that the people to be affected by such initiatives are truly the ones seeking the change in the law. In cases where it is not possible to verify a signature to a petition which would seek to alter the law of the community, such a signature must be discarded. The requirements of the state statute and the local charter are clear. As the rules are substantially similar, compliance with either set may have yielded a different result. The Clerk of the City of Beaumont drew no new lines and erected no new hurdles for the Plaintiffs to overcome. If anything, she went beyond the call of her duties in trying to correct the Plaintiffs' mistakes. The Plaintiffs have failed to demonstrate both a likelihood of success on the merits and a substantial threat of irreparable harm. The Plaintiffs' Motion for a Preliminary Injunction is Denied.